

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHANE GARST, an individual, and JAYME GARST, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WINTHROP CRAMER, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:  25-CV-2341-GPC-MSB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 7]** |

In this case, Plaintiffs challenge the legality of certain domain names registered by Defendant bearing Plaintiffs' trademarked names. Before the Court is Defendant Cramer's motion to dismiss. ECF No. 7. The motion to dismiss has been fully briefed. ECF Nos. 7, 9, 10. The Court finds that the matter is appropriate for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1).

For the reasons below, the Court **DENIES** Defendant's motion to dismiss.

//

//

1

**FACTUAL BACKGROUND**

Plaintiff Dr. Shane Garst and his wife, Plaintiff Jayme Garst, are in the business of real estate consulting and building with a specialization in single-family home remodels. ECF No. 1, ¶ 3. On February 11, 2022, Defendant Winthrop Cramer entered into an agreement to purchase a house from Plaintiffs. *Id.* ¶ 14. At the time of the purchase agreement, Plaintiffs were still in the process of building and remodeling the house. *Id.*

After the sale of the property, Defendant Cramer informed Plaintiffs of alleged defects with the house, including water damage and water intrusion. *Id*. ¶ 21. Plaintiffs made several attempts to address and mitigate the alleged damage and defects identified by Defendant. *Id.* ¶ 22. However, Defendant eventually prohibited Plaintiffs from accessing the property. *Id.* On January 11, 2023, Defendant filed a construction defect lawsuit against the plaintiffs in the San Diego Superior Court, which is currently pending. *Id.* ¶¶ 31, 33.

Prior to the filing of this cyberpiracy lawsuit, Defendant created a website under the domain name "www.customehomesd.com" ("Website"). *Id.* ¶ 25. The Website bears the heading: "ATTENTION HOMEBUYERS: DON'T MAKE THE SAME MISTAKE WE DID." ECF No. 1, at 19. The content of the Website includes allegations that Plaintiffs cut corners, used subpar materials, changed designs without Defendant's consent, and abandoned the project. *See id*.

On September 1, 2022, Defendant hosted and published two additional websites, both of which automatically redirect the web user to the Website. ECF No. 1, ¶¶ 25-26. These websites use the domain names "www.shanegarst.com" and "www.jaymegarst.com." *Id*.

On December 13, 2024, Plaintiffs filed a trademark application with the United States Patent and Trademark Office for the marks "SHANE GARST" and "JAYME GARST" in connection with, among other things, real estate services. *Id.* ¶¶ 41, 47.

25-CV-2341-GPC-MSB

Plaintiff Shane Garst alleges that he has used his name as a trademark for his real estate services since as early as 2017. *Id.* ¶ 42. Plaintiff Jayme Garst alleges that she has used her name as a trademark for her services—including real estate advertising—since as early as 2014. *Id.* ¶ 48.

Plaintiffs' trademark application for the mark "SHANE GARST" was approved for publication and published on August 19, 2025. *Id.* ¶ 42. Plaintiffs' trademark application for the mark "JAYME GARST" was approved for publication and published on July 8, 2025. *Id.* ¶ 49.

Defendant has filed a 90-day extension of time to oppose both trademarks, causing a delay in registration for both trademarks. *Id.* ¶¶ 44, 50. Plaintiff alleges that, upon information and belief, Defendant has no good faith reason to challenge the trademark applications. *Id.* ¶¶ 46, 52.

On September 8, 2025, Plaintiffs filed a complaint in this Court alleging two counts of cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act. ECF No. 1. On November 6, 2025, Defendant moved to dismiss the complaint for failure to state a claim under Federal Rule ("Rule")[1] of Civil Procedure 12(b)(6). ECF No. 7. On December 19, 2025, Plaintiffs filed a response in opposition to Defendant's motion, ECF No. 9, to which Defendant replied on January 16, 2026, ECF No. 10.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is appropriate where the complaint fails to state or allege sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[1] "Rule" or "Rules" refers to the Federal Rules of Civil Procedure unless otherwise noted.

25-CV-2341-GPC-MSB

accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When reviewing a Rule 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

## REQUEST FOR JUDICIAL NOTICE

Generally, on a motion to dismiss, courts will limit their review to the contents of the complaint and documents attached thereto. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1019-20 (C.D. Cal. 2015). However, under Federal Rule of Evidence 201, a district court may—without converting a Rule 12(b)(6) motion to a motion for summary judgment—take judicial notice of facts not subject to reasonable dispute from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *Gerritsen*, 112 F. Supp. 3d at 1020.

Defendant requests judicial notice of several "facts," including (1) Plaintiffs' prior attempt to procure a temporary restraining order in state court and the judge's response, (2) Defendant's own comments in a declaration in support of his own permanent restraining order against Plaintiffs; (3) that a state court judge recused herself from proceedings between the parties and the circumstances surrounding the recusal; (4) the pending state lawsuit between the parties; and (5) the preliminary injunction denied to Plaintiffs for failure to demonstrate likelihood of prevailing on the merits of their defamation claim. ECF. No. 7-1, at 2-3.

Courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *Kipp v. Davis*, 971 F.3d 939, 945 n. 2 (9th Cir. 2020) (quoting *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)). Even so, when a court takes judicial notice of proceedings in another court—or opinions issued in such proceedings—it may do so only for the existence of the documents, not for the truth of the facts recited therein. *Lee*, 250 F. 3d at 690.

Plaintiffs do not oppose Defendant's request for judicial notice. However, the Court must still assess the propriety of Defendant's request.

Here, the Court finds several issues with Defendants' request for judicial notice. While case files in state court proceedings are matters of public record and, therefore, generally a proper subject for judicial notice, Defendant may only ask the Court to take notice their existence. *See Kipp*, 971 F.3d at 945 n.2. Here, Defendant seemingly asks the Court to accept as true the contents and conclusions set forth therein. *See, e.g.*, *Schmitz v. Asman*, No. 2:20-CV-00195-DJC-CKD (PS), 2024 WL 4275621, at *4 (E.D. Cal. Sept. 24, 2024), *report and recommendation adopted*, No. 2:20-CV-00195-DJC-CKD (PS), 2024 WL 4497178 (E.D. Cal. Oct. 15, 2024). The Court cannot do so. *Id.*; *see also Lee*, 250 F. 3d at 690.

Additionally, not all the documents offered by Defendant are properly subject to judicial notice. For instance, "a party's own declarations . . . do not constitute a 'source[] whose accuracy cannot reasonably be questioned.'" *Holley v. Tripp*, No. 2:24-CV-00071-AKB, 2024 WL 3966444, at *3 (D. Idaho Aug. 27, 2024) (quoting Fed. R. Evid. 201(b)(2)).

Lastly, the Court questions the relevance of some of the proffered documents. The state judge's recusal of herself and the injunctive relief proceedings between the parties bear little to no discernible relevance to the issues raised in the motion to dismiss, which deal solely with Defendant's use of certain domain names. *See, e.g.*, *Holley*, 2024 WL

25-CV-2341-GPC-MSB

3966444, at *4 (declining to take judicial notice of state court orders not relevant to the issues raised in a motion to dismiss); *Gerritsen*, 112 F. Supp. 3d at 1030 (denying judicial notice of information in press releases and publicly available news articles because it was irrelevant for purposes of the motion to dismiss). Indeed, "[t]he only relevant question in deciding such a motion is whether plaintiff's allegations, taken as true, plausibly state a claim." *Gerritsen*, 112 F. Supp. 3d at 1022.

Given Plaintiff's lack of opposition, the Court grants Defendant's request for judicial notice only insofar as it acknowledges the existence of ongoing state court proceedings between the parties. However, the Court will not judicially notice the truth of any facts or conclusions asserted therein, nor will the Court judicially notice Defendant's own declaration.

## DISCUSSION

Defendant moves to dismiss, arguing that Plaintiffs have failed to state a claim for cyberpiracy under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1225(d). *See* ECF. No. 7. Specifically, Defendant argues that Plaintiffs cannot show: (1) that use of the domain was not fair use, (2) a bad faith intent to profit, or (3) likelihood of confusion.

## I.    Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)

To state a claim for "cyberpiracy" under the ACPA, a plaintiff must show that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1221 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)).

The ACPA was enacted to "protect consumers . . . and to provide clarity in the law for trademark owners by prohibiting bad-faith and abusive registration of distinctive marks." S. Rep. No 106-140 at 4.

It is undisputed that Defendant has registered the domain names www.shanegarst.com and www.jaymegarst.com. Thus, the Court looks to the other two required elements of a cyberpiracy claim.

## II.   Bad Faith Intent to Profit

The ACPA directs courts to consider nine non-exhaustive factors when determining bad faith intent. 15 U.S.C. § 1125(d)(1)(B)(i)(I-IX).[2] However, courts acknowledge that

---

[2] 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)-(IX). The factors considered are:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are

25-CV-2341-GPC-MSB

"the most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors" enumerated by Congress. *Interstellar Starship Servs., Ltd. v. Epix, Inc.,* 304 F.3d 936, 946–47 (9th Cir. 2002).

Here, Plaintiffs have alleged that they have used their names as trademarks for real estate services for years. ECF No. 1, ¶¶ 42, 48. Further, Defendant registered the domain names consisting of the Plaintiffs' names in order to "disparage" Plaintiffs. *Id.* ¶¶ 56, 63. Plaintiffs have also alleged that Defendant created the websites with the intent to pressure Plaintiffs into paying money to Defendant while avoiding Defendant's obligations to pay Plaintiffs the $200,000 owed from the sale of the property still held in escrow. *Id.* ¶¶ 56-57, 63-64.

Defendant argues that Plaintiffs have not plausibly alleged bad faith intent to profit. ECF No. 7, at 6. However, in the context of the ACPA, profit "includes an attempt to procure an advantageous gain or return," including the use of the domain name to get leverage in a business dispute. *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1220-21 (9th Cir. 2010) (quoting *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 786 (8th Cir. 2004)).

In *DSPT*, a defendant accused of cyberpiracy claimed that he could not be found liable under the cyberpiracy statute because he only "used DSPT's mark to gain leverage over DSPT in bargaining for money he claimed he was owed, not to sell under DSPT's mark or sell the mark to DSPT." *DSPT Int'l, Inc.*, 624 F. 3d at 1219. He further argued that "intent to profit" under the act must be an intent to profit from the goodwill associated with

---

famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

8

25-CV-2341-GPC-MSB

the mark rather than to gain some other benefit. *Id.* The Ninth Circuit disagreed, finding that while the statute was intended to prevent cybersquatters from registering well-known brand names as internet domain names in order to make the trademark owners buy the ability to do business under their own names, the statute was written more broadly than what may have led to its passage. *Id.* at 1219. The ACPA broadly covers one who "registers, traffics in, or uses," with "or" between the terms, so that use of a domain name to get leverage for a claim for commissions was enough to evidence "intent to profit." *Id.*

Plaintiff has pled additional facts further supporting an inference of bad faith. For instance, Plaintiffs claim that Defendant has paid to ensure that the Website will populate at or near the top of any web keyword search for Shane or Jayme Garst. ECF No. 1, ¶¶ 25-26. These facts support an inference that Defendant is using a domain name that consists of the legal names of the Plaintiffs to create leverage for Defendant's construction defects claims. Plaintiffs further assert that Defendant has opposed Plaintiffs' attempts to trademark their names with the United States Patent and Trademark Office and harassed Plaintiffs in their neighborhood and at city council meetings. *Id.* ¶¶ 23, 34, 37, 46-50.

In reviewing a motion to dismiss, the Court must accept all Plaintiffs' allegations as true and make all reasonable inferences in their favor. *Chubb Custom Inc.*, 710 F.3d at 956. Applying this standard, Plaintiff has adequately alleged a Defendant's bad faith intent to profit in registering and using the www.shanegarst.com and www.jaymegarst.com domain names.

**A. Defendant's Fair Use Arguments are Premature**

Defendant argues that Plaintiffs' claims must fail because they cannot establish that Defendants "use of the domain was not fair use or unlawful as a matter of law." ECF No. 7, at 12. This argument is premature.

Defendant is correct that the ACPA provides that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable

25-CV-2341-GPC-MSB

grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). "However, courts should make use of this reasonable belief defense very sparingly and only in the most unusual cases." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1203 (9th Cir. 2009). Further, under the ACPA, fair use of a mark does not necessarily mean that the domain registrant lacked bad faith, *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 690 (9th Cir. 2005), and a defendant who acts even partially in bad faith is not entitled to benefit from ACPA's safe harbor provision, *Lahoti*, 586 F. 3d at 1203. Thus, whether the fair use defense applies in this action depends on a variety of factual determinations regarding Defendant's intentions and beliefs. *See*, *e.g.*, *Roseville Fullerton Burton Holdings, LLC v. SoCal Wheels, Inc.*, No. SACV141954JLSJCGX, 2016 WL 6159014, at *8 (C.D. Cal. May 20, 2016). It would be inappropriate to resolve these factual issues at the motion to dismiss stage. *See*, *e.g.*, *id.*; *Inhale, Inc. v. Inhale Health*, LLC, No. CV 19-06379-CJC, 2024 WL 3468816, at *2 (C.D. Cal. Jan. 16, 2024); *Renovation Realty, Inc. v. Esplanade*, No. 13-CV-396-MMA-BLM, 2013 WL 12114628, at *2 (S.D. Cal. May 9, 2013) ("Whether Defendant actually had 'bad faith intent'—as defined in section 1125(d)(1)(B)—is a factual matter not properly before the court at this stage of the proceedings.").

Further, none of the cases cited by Defendant in support of his fair use arguments reflect the procedural posture of this case. *See*, *e.g.*, *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005); *See TMI, Inc. v. Maxwell,* 368 F.3d 20 433, 439-440 (2004). In *Lamparello* and *TMI*, cyberpiracy claims were before courts on motions for summary judgment, at which point the courts were tasked with considering evidence and drawing legal conclusions. Here, the Court is only tasked with considering whether Plaintiff has stated sufficient facts, accepted as true, to allege that Defendant had a bad faith intent to profit. The Court determines that Plaintiff has done so.

25-CV-2341-GPC-MSB

### III.     Use of a Domain Name that is Confusingly Similar to the Mark

To satisfy the final element of a cyberpiracy claim, Plaintiff must adequately allege that the domain name registered and utilized by Defendant "is identical or confusingly similar to a protected mark owned by the plaintiff." *DSPT Int'l, Inc.*, 624 F.3d at 1221 (quoting 15 U.S.C. § 1125(d)).

Defendant first argues that it is a "threshold issue" whether the marks are "distinctive, famous," or protected by certain federal legislation. ECF No. 7, at 10. Defendant misstates the law. The ACPA applies when a person registers, uses, or traffics in a domain name that "is identical or confusingly similar" to a mark owned by another person. 15 U.S.C. § 1125(d)(1)A)(ii)(I). The mark need not be a trademark, word, or name protected by the federal statutes identified in 15 U.S.C. § 1125(d)(1)(A)(ii)(III). *See DSPT Int'l, Inc.*, 624 F.3d at 1221 (ownership of common law trademark established by actual use of symbol to identify services).

Defendant next argues that the complaint does not allege that the domain names are identical or confusingly similar to the mark such that there is a "likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." ECF No. 7, at 10 (quoting 15 U.S.C. § 1225(d)(1)(B)(i)(V)). However, "likelihood of confusion" is only contemplated within the ACPA as one of the nine factors courts might consider when assessing a defendant's bad faith. 15 U.S.C. § 1225(d)(1)(B)(i)(V). It is not—as Defendants allege—a requirement for a claim under the ACPA.

Further, in arguing that Plaintiffs have not shown the marks to be "confusingly similar" to Defendant's domain names, Defendant cites to a multi-factor test for assessing "likelihood of confusion." ECF No. 7, at 10. However, Defendant misstates the applicable standard. "[T]he ACPA requires only facial comparison of the domain name to the mark rather than the more involved likelihood of confusion analysis." *DISC Intellectual Props. LLC v. Delman*, No. CV 07-5306 PA-PJW, 2007 WL 4973849, at *5 (C.D. Cal. Sept. 17,

25-CV-2341-GPC-MSB

2007); *Coca-Cola*, 382 F.3d at 783 ("The inquiry under the ACPA is thus narrower than the traditional multifactor likelihood of confusion test for trademark infringement."). Thus, this Court need only see if Plaintiff has alleged that the marks are confusingly similar as assessed through a facial comparison.

Though Plaintiff does not use the words "identical" or "confusingly similar," it is clear from the face of the complaint that the marks and the domain names are identical. The marks in question are Plaintiffs' names: Shane and Jayme Garst. Plaintiffs allege that the marks "SHANE GARST" and "JAYME GARST" were approved by the United States Patent and Trademark Office and have been used in connection to real estate services since 2017 and 2014, respectively. ECF. No. 1, ¶¶ 42-43, 48-49. Plaintiffs further allege that the marks were "distinctive at the time Defendant registered [the domain names] and remain[] distinctive today." *Id.* ¶¶ 54, 62. Lastly, Plaintiffs have alleged that Defendant has registered and uses the domain names www.shanegarst.com and www.jaymegarst.com, which consist of Plaintiffs' marks.

Thus, it is clear from the face of the complaint that the domain name is "identical or confusingly similar" to Plaintiffs' marks.

In summary, Plaintiffs have pled sufficient facts showing that (1) Defendant registered and used the domain names "www.shanegarst.com" and "www.jaymegarst.com"; (2) the domain names are identical or confusingly similar to the protected marks "SHANE GARST" and "JAYME GARST" owned by the Plaintiffs; and (3) Defendant acted with bad faith intent to profit from the marks. Thus, Plaintiffs have adequately stated claims for cyberpiracy.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendant's motion to dismiss the complaint.

**IT IS SO ORDERED.**

Dated:  February 5, 2026

Hon. Gonzalo P. Curiel
United States District Judge

25-CV-2341-GPC-MSB